UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONNA PROXMIRE,

    Plaintiff,

v.                                            Case No. 8:19-cv-792-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.     Procedural Background**

Plaintiff filed an application for SSI (Tr. 1561-70). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 1423-52, 1498-1502). Plaintiff then requested an administrative hearing (Tr. 1506-20). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 1375-1417). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits (Tr. 1346-60). Subsequently, Plaintiff requested review from the Appeals Council (Tr. 1559-60), which the Appeals Council denied (Tr. 1-7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1964, claimed disability beginning March 15, 2014 (Tr. 1561).  Plaintiff completed three years of college (Tr. 1585).  Plaintiff's past relevant work experience included work as a telephone interviewer/survey worker, cook, bartender, and server (Tr. 1406-07, 1585).  Plaintiff alleged disability due to broken tibia and fibula in the left leg, ambulatory limitations, right leg full of metal, arthritis, torn ACL, kneecap refractured, chronic obstructive pulmonary disease ("COPD"), and asthma (Tr. 1584).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 15, 2014, the alleged onset date (Tr. 1352). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: long history of COPD, recurrent, in a daily smoker; history of prior left ankle and fibular fracture with displacement; history of prior right ankle and femur fracture with screw placement; hypertension; and obesity (Tr. 1352). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 1352).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff could occasionally climb stairs and ramps; occasionally balance on uneven surfaces; frequently stoop; occasionally kneel, crouch, and crawl; could never climb ladders, scaffolds, ropes, or at open, unprotected heights; was limited in sitting, standing, and walking to two hours at a time during an eight-hour workday; required a break of ten to 15 minutes after such two-hour periods; must avoid extreme vibrations, extreme cold temperatures, and extreme humidity; and must avoid concentrated exposure to extreme smoke, dust, fumes, gases, and work in poorly ventilated areas (Tr. 1352-53).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's

subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 1353).  Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as a survey worker, both as actually performed by Plaintiff and as generally performed in the national economy (Tr. 1355-56). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 1356).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful

3

activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. § 416.920(a)(4).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 416.920(a)(4)(v).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citation omitted).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Ingram*, 496 F.3d at 1260 (citation omitted).  The scope of

review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ failed to address and evaluate her subjective complaints of inability to talk for prolonged periods of time and urinary frequency (Doc. 19 at 7-8).  She contends that because she has medical conditions which could reasonably cause those symptoms, i.e., COPD and stress incontinence, the ALJ was required to address them and explain why they were discounted (*id.* at 8).

For the reasons stated below, the Court finds that Plaintiff's claim regarding urinary frequency has merit and requires remand.

To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms.  *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 416.929.  When the ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine their effect on the claimant's capacity to work.[1]  20 C.F.R. § 416.929(c)(1).

---

[1] In making this evaluation, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements by the claimant and her doctors.  20 C.F.R. § 416.929(c)(1).  The ALJ also considers factors such as the claimant's daily activities, the effectiveness and side effects of her medications, precipitating and aggravating factors, and other treatments and measures that she has taken to relieve the symptoms.  *Id*. § 416.929(c)(3).

If the ALJ decides to discount or reject the claimant's alleged symptoms, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. Where the ALJ makes no explicit finding, "the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole." *Id.* (internal quotation marks omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 740 (11th Cir. 2017).

### A. Stress Incontinence and Urinary Frequency

At the outset, the Court notes that the ALJ did not mention or discuss Plaintiff's allegation that she suffers from stress incontinence. While Plaintiff did not list stress incontinence as one of her disabling impairments in her application for SSI benefits, Plaintiff and her counsel both raised the issue before the ALJ. Plaintiff's counsel flagged the issue in his prehearing memorandum to the ALJ (Tr. 1636-37). Counsel stated therein that Plaintiff suffers from, among other things, stress incontinence; she takes medication to help but it is only partially effective; and the impairment results in work-related limitations, i.e., the need for unscheduled restroom breaks (*id.*). Thereafter, Plaintiff testified at the administrative hearing that she suffered from stress incontinence; she is prescribed oxybutynin chloride to help alleviate its symptoms;[2] she needs to use the restroom once an hour on a good day and twice an hour on a bad day; and she is prescribed HCTZ (hydrochlorothiazide), a diuretic (Tr. 1402-1404). And, on questioning by counsel, the VE testified that no work would be available if, in

---

[2] Oxybutynin, a generic form of Ditropan, is used to treat overactive bladder (a condition in which the bladder muscles contract uncontrollably and cause frequent urination, urgent need to urinate, and inability to control urination) to control urgent, frequent, or uncontrolled urination in people who have overactive bladder. National Institute of Health, U.S. National Library of Medicine, Drug Information, available at https://medlineplus.gov/druginfo/meds/a682141.html (last visited Sept. 26, 2020).

6

addition to normal work breaks, an individual required three to four unscheduled, five-minute breaks to use the restroom about two or three days per week (Tr. 1413-14).[3]

On this record, the Court finds that the ALJ was duty bound to address Plaintiff's allegation that she suffered from stress incontinence—a medical condition that could reasonably be expected to produce the symptom of frequent urination. At a minimum, because Plaintiff and her attorney raised the issue of stress incontinence and alleged it resulted in a work-related limitation, the ALJ should have considered whether stress incontinence was a medically determinable impairment.[4] Had the ALJ addressed whether it was and concluded it was not, there would be no error in his failure to address Plaintiff's subjective allegation of urinary frequency. *See* 20 C.F.R. § 416.929(b) (absent a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, a claimant's symptoms will not be found to affect her ability to work). However, because the ALJ did not address Plaintiff's allegation of stress incontinence whatsoever, the Court cannot determine whether the ALJ erred by failing to address Plaintiff's subjective allegation of frequent urination.

---

[3] Assuming the limitation was needed only once or twice a week, the VE testified that "once or twice a week, in lieu of what is considered normal breaks, it would be reasonable and tolerable" (Tr. 1414). The limitation, however, stated that the unscheduled breaks *were in addition to normal work breaks* (Tr. 1413), not in lieu of them. As such, the import of the VE's testimony, if any, is unclear.

[4] The Commissioner does not dispute that Plaintiff has a diagnosis of stress incontinence since at least March 2013 (Doc. 19 at 13). Progress notes during the pertinent period reflect that stress incontinence was an "active problem," and Plaintiff consistently was prescribed oxybutynin chloride (*see, e.g.,* Tr. 1754-44, 1758-59, 1906-07, 1912-13, 1917, 1919, 1923-25). While an ARNP diagnosed Plaintiff with stress incontinence (*see id.*), the record also reflects that several physicians assessed history of hyperactive bladder and prescribed oxybutynin (Ditropan) (*see, e.g.,* Tr. 2077, 2082, 2424, 2480, 2482, 2484-85). As such, it appears there is evidence from an acceptable medical source of a medically determinable impairment that could reasonably cause Plaintiff's alleged urinary frequency. This is noted because the regulations in effect at the time Plaintiff filed her claim for SSI provided that an ARNP was not an acceptable medical source who could serve as the basis to establish an impairment. *See* 20 C.F.R. § 416.913(a), (d)(1); *see also Crawford*, 363 F.3d at 1160 (opinions from individuals who are not acceptable medical sources cannot establish that a claimant has an impairment).

While the Court agrees with the Commissioner's urging that there is scant, if any, evidence supporting Plaintiff's subjective allegation of urinary frequency (Doc. 19 at 13-14),[5] the Court can only rely on what the ALJ said, not on a post-hoc rationalization tendered by the Commissioner on appeal.  *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).  And as indicated above, here the ALJ said nothing.  Consequently, the Court is constrained to conclude that the ALJ erred by failing to consider Plaintiff's allegations of stress incontinence and complaints of urinary frequency, and remand on this basis is required.  *See Walker v. Bowen*, 826 F.2d 996, 1001-02 (11th Cir. 1987) (holding that the ALJ's failure to consider all impairments alleged requires remand because the ALJ is required to consider the combined effect of the claimant's impairments, including any resulting symptoms, in determining whether she is disabled); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (holding that the ALJ's failure to consider all impairments alleged mandates reversal); *cf. Sullivan v. Comm'r of Soc. Sec.*, 694 F. App'x 670, 671 (11th Cir. 2017) (holding that a represented claimant could not meet her burden to prove she was disabled on the basis of an impairment that she did not raise in her application for benefits *or* offer at the hearing as a basis for disability); *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (holding that the ALJ did not have a duty to

---

[5] The Commissioner contends that, other than her own testimony, Plaintiff failed to point to any evidence showing that her symptoms were consistently as disruptive as she alleged (Doc. 19 at 13).  The Commissioner notes that Plaintiff repeatedly reported no changes in urinary habits, she did not raise urinary complaints despite not taking prescribed medications, and hospitalization records noted that she was "[c]ontinent of urine" (*id.* at 14).  In light of that evidence, the Commissioner argues that "the ALJ was not required to address Plaintiff's unsupported allegations further" (*id.*).  The Commissioner, however, ignores that the ALJ did not mention, let alone discuss, Plaintiff's allegation of urinary frequency.

consider a diagnosis where the claimant was represented by counsel and counsel *did not raise* the issue at the hearing) (emphasis added).

In rendering this finding, the Court has considered the Eleventh Circuit's decision in *Norton v. Comm'r of Soc. Sec.*, 607 F. App'x 913, 916 (11th Cir. 2015) (rejecting argument that the ALJ erred by failing to consider subjective complaint of frequent urination). In that case, however, the ALJ actually considered the urinary incontinence impairment. *See id.* ("Substantial evidence also supported the ALJ's conclusion that Norton did not suffer from a severe impairment caused by urinary incontinence, which was not included in his application as a disabling impairment."). In this case, the ALJ made no findings and did not discuss the evidence in the record related to stress incontinence. The Court recognizes that an ALJ is not required to discuss every piece of evidence in detail. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'") (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (internal quotation omitted)). On this record, however, the Court cannot find that the ALJ adequately addressed Plaintiff's allegations of stress incontinence and resulting urinary frequency. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (providing that the ALJ must consider all of the impairment evidence presented at the hearing, stating the weight accorded to each item and the reasons for accepting or rejecting the evidence).

### B.     Inability to Talk for Prolonged Periods Due to Shortness of Breath

Plaintiff contends that the ALJ failed to fully and fairly evaluate her subjective complaint of inability to talk for prolonged periods because the ALJ did not discuss her

9

testimony that she was terminated from her job as a telemarketer/survey worker due to her breathing and COPD (Doc. 19 at 7).

The Court finds this contention unavailing. The ALJ fully and fairly addressed Plaintiff's testimony that she had had work-related limitations stemming from shortness of breath due to asthma/COPD (Tr. 1353). In doing so, the ALJ explained that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence because (1) the evidence of her asthma/COPD was very limited and underwhelming, (2) Plaintiff's actual exacerbations of COPD were infrequent—three visits to the emergency room in three years—and her symptoms improved with medication, and (3) Plaintiff's respiratory health was exacerbated by cigarette smoking yet she did not quit smoking despite multiple warnings from her medical providers (Tr. 1354-55).[6] The decision also reflects that the ALJ considered the following evidence (exhibits): (1) progress notes that documented shortness of breath and reduced respiratory excursion on occasion and normal respiratory excursion and clear lungs on other occasions; (2) a 2017 hospitalization for abdominal pain in which it was noted that Plaintiff's COPD was not in acute exacerbation and she often had regular respiratory rate and unlabored breathing with oxygen saturation in the reference range of normal; and (3) a pulmonary functioning test in February 2016 that was interpreted as "normal spirometry" (*id.*). The ALJ's stated reasons and consideration of the above evidence provide ample support for the ALJ's rejection of Plaintiff's subjective complaints of breathing difficulties. Further, on the Court's review of the

---

[6] The ALJ also noted that Plaintiff has filed three previous claims for disability, which he found established a pattern in which many sources over the course of many years have called into question and disputed her allegations of disability, and that there was no evidence corresponding with Plaintiff's alleged onset of disability (Tr. 1354).

record, both are supported by substantial evidence (*see, e.g,* Tr. 1650, 1652, 1666, 1668, 1679, 1682, 1689, 1762-64, 1776, 1783, 1795, 1811, 1818, 1821, 2104-12, 2130, 2414, 2425).[7]

Plaintiff is correct in noting that the ALJ did not *explicitly* mention her testimony that she lost her telemarketer/survey worker job because "sometimes she had to take gasps of air or ask the person to hold for a moment while she used her inhaler" (Tr. 1389-90). By the Court's reading of the decision, however, the implication is obvious that the ALJ rejected that aspect of her testimony for the reasons set forth above.[8] Moreover, as noted by the Commissioner, the ALJ referenced/cited three ER records that noted: (1) after receiving treatment for respiratory complaints in September 2015, Plaintiff was "much more conversant," and spoke in "complete >8-10 word sentences with improved aeration and wheezing" (Tr. 1682); (2) in October 2016, Plaintiff had mild wheezing on examination but improved with medication and was "able to speak at length regarding her dogs and home situation without respiratory distress" (Tr. 1818, 1821); and (3) during a September 2017 hospitalization for an acute exacerbation of COPD, Plaintiff was in no acute distress and was "speaking in complete sentences without difficulty"

---

[7] Further, it was not improper for the ALJ to consider Plaintiff's continued use of cigarettes as a reason that undermined her complaints of disabling breathing problems. *See Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015) (concluding that substantial evidence supported the ALJ's decision to discount the claimant's subjective complaints where, among other things, the ALJ found that the claimant continued to smoke despite repeated warnings that doing so would impede healing and exacerbate symptoms); *Marsh v. Saul*, No. 2:19-cv-00652-LSC, 2020 WL 5203982, at *7 (N.D. Ala. Sept. 1, 2020) (finding that the claimant's continued smoking habit undermined the alleged severity of his conditions and symptoms and supported the ALJ's decision to discount his testimony); *Rodriguez v. Colvin*, No. 8:12-cv-1592-T-33EAJ, 2013 WL 4495173, at *7 (M.D. Fla. Aug. 20, 2013) (concluding that the ALJ did not err in determining that the plaintiff's subjective complaints were not entirely credible where the ALJ noted that the plaintiff's continued smoking habit was inconsistent with the severe limitations alleged); *see King v. Astrue,* No. 5:07cv84/RS-EMT, 2008 WL 2038245, at *10 (N.D. Fla. May 12, 2008) (noting that the ALJ properly observed that claimant's "continued smoking 'begs the question of how serious her symptoms are'"); *see also Holley v. Chater*, 931 F. Supp. 840, 847-48 (S.D. Fla. 1996) ("Moreover, the continued use of cigarettes by plaintiff suggests that his pulmonary condition is not as severe [as] he alleges and further supports the ALJ's decision to accord [plaintiff's] subjective complaints diminished weight.").

[8] The ALJ did note that the SSA representative who conducted Plaintiff's telephone claim reported that Plaintiff "sounded like she needed to catch her breath" (Tr. 1355).

11

despite having diffuse expiratory wheezes (Tr. 2422).  That the ALJ did not recount those specific notations does not compel a different result because the decision clearly reflects that the ALJ considered the records in which they were made.  *Dyer*, 395 F.3d at 1210-11 (providing that an ALJ is not required to summarize the entire record in his decision or "cite particular phrases or formulations" in assessing Plaintiff's subjective allegations).  In fact, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole."  *Id*. at 1211 (internal quotations omitted).  Here, the Court finds that the ALJ considered Plaintiff's medical condition as a whole, and Plaintiff fails to demonstrate otherwise.

In sum, the ALJ's stated reasons for rejecting Plaintiff's allegations of disabling COPD-related symptoms and the records cited by the ALJ provide adequate support for the rejection of her complaint of inability to talk for prolonged periods.

Lastly, the Court finds Plaintiff reliance on *Porter* unpersuasive.  As the Commissioner notes, that case in distinguishable in that the ALJ in this case fully and fairly addressed Plaintiff's alleged respiratory symptoms.  *Cf. Porter*, 2011 WL 1238430, at \*3 (reversing, in part, because the ALJ's boilerplate statements about the claimant's credibility were insufficient to address her testimony about the inability to engage in prolonged talking because the only possible reason the ALJ may have provided for discounting that testimony was not supported by substantial evidence).

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is reversed, and the matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings to apply the proper legal standards consistent with the above findings.

2. The Clerk is directed to enter final judgment in favor of the Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 29th day of September 2020.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record